IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Herbert Palmer, Jr. #260691, ) | |
| ) | |
| Petitioner, ) | |
| ) | C.A. No.: 6:07-3140-PMD |
| v. ) | |
| ) | **ORDER** |
| Robert M. Stevenson, BRCI Warden, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

This matter is before the court upon Petitioner Herbert Palmer's ("Petitioner" or "Palmer") petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. The record contains a report and recommendation ("R&R") of a Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge's R&R recommends that Respondent's Motion for Summary Judgment be granted and Petitioner's Motion for Summary Judgment be denied. If a party disagrees with the recommendation as it stands in the R&R, that party may submit written objections to the court within ten days after being served with a copy of that report. 28 U.S.C. § 636(b)(1). Petitioner filed timely objections to the R&R.

**BACKGROUND**

Petitioner is currently confined at the McCormick Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Charleston County.[1] On March 3, 1998, Petitioner was indicted for murder involving the November 2, 1997 homicide of Mario Perry (98-GS-10-1859), and on August 2, 1999, he was indicted for pointing a firearm at a person (99-GS-10-5258) and possession of a firearm during the commission

---

[1] At the time Palmer filed his petition, he was confined at the Broad River Correctional Institution.

of a violent crime (99-GS-10-5259). Attorney Robert. G. Howe represented Petitioner on these charges, and on August 23, 1999, Petitioner entered a plea of not guilty and appeared before the Honorable Daniel F. Pieper on the charges. A jury found Petitioner guilty of all three charges on August 26, 1999, and Judge Pieper sentenced Petitioner to life imprisonment for murder and concurrent terms of three years for pointing a firearm and five years for possession of a firearm during the commission of a violent crime.

Petitioner appealed to the South Carolina Supreme Court, and Joseph L. Savitz of the South Carolina Office of Appellate Defense represented Petitioner on appeal. Savitz filed a final *Anders* brief on or about December 13, 2001, in which he presented the following issue: "The judge erred by neglecting to instruct the jury on self-defense." (Resp. Mot. for Summ. J. Ex. 1.) Savitz also sought to be relieved as counsel. Petitioner filed a *pro se* brief on or about January 24, 2002, in which he listed the following issues for appeal:

> 1. Whether the trial judge erred by neglecting to instruct the jury on involuntary manslaughter?
> 2. Whether the court lacked subject matter jurisdiction to try the appellant on [m]urder, [p]ossession of a firearm during the commission of a violent crime, and pointing a firearm?
> 3. Whether the state violated the Brady rule by failure to disclose Brady material in time to use at trial?
> 4. Whether the State failed to provide the Appellant with an impartial trial judge?
> 5. Whether the trial judge involvement with the State's witness appearance in this case deprived Appellant of his Due Process Right to a fair trial?
> 6. Whether the surprise indictment for pointing a firearm deprived Appellant of a fair trial?

(Resp. Mot. for Summ. J. Ex. 2.)

On May 30, 2002, the Court of Appeals of South Carolina entered an order dismissing the appeal and granting counsel's petition to be relieved. *See South Carolina v. Palmer*, No. 2002-UP-390 (S.C. Ct. App. May 30, 2002). The unpublished per curiam order states, "After a thorough

review of the record pursuant to Anders and State v. Williams, 305 S.C. 116, 406 S.E.2d 357 (1991), we dismiss the appeal and grant counsel's petition to be relieved." *Id.* The remittitur was entered on July 9, 2002.

Palmer filed an application for post-conviction relief on October 23, 2002. In that application, Petitioner provided the following responses to these questions:

> 9. State concisely the grounds on which you base your allegation that you are being held in custody unlawfully:
> (a) ineffective assistance of counsel
> (b) [j]udicial misconduct by the trial judge
> (c) [s]tructural error in the trial
> 10. State concisely and in the same order the facts which support each of the grounds set out in (9):
> (a) Failure to make objection
> (b) Failure to rescue [sic] the trial judge by request
> (c) Judge's involvement with State's witness appearance at trial

(App. 772.) The respondent filed a return in the matter, and an evidentiary hearing was held on June 15, 2004, before the Honorable Doyet A. Early, III. (*Id.* at 784.) Palmer was present and represented by Joshua Snow Kendrick. Testimony was received from Petitioner, Brian Johnson, Theresa Palmer, and Robert Howe. At the evidentiary hearing, Petitioner's counsel, Joshua Kendrick, indicated that the Attorney General moved to dismiss the final two counts of the application for post-conviction relief, he (Kendrick) had discussed the motion with his client, and both he and his client agreed to the dismissal. (*Id.* at 788.) The post-conviction relief ("PCR") application thus proceeded only on the claim of ineffective assistance of counsel. (*Id.* at 788-89.) On August 3, 2004, Judge Early issued an order denying the application for post-conviction relief and dismissing it with prejudice. (*Id.* at 864.)

Palmer filed a petition for writ of certiorari, and the question presented stated, "Did the PCR court err in determining trial counsel was effective, after the record demonstrated counsel was

3

unprepared for trial on a crucial area of the State's case?" (Resp. Mot. for Summ. J. Ex. 5.) The respondent made a return to the petition on December 21, 2005. The matter was sent to the South Carolina Court of Appeals, and on June 19, 2007, that court entered its letter order that certiorari was denied. (Resp. Mot. for Summ. J. Ex. 7.) The remittitur was entered on July 6, 2007. (Resp. Mot. for Summ. J. Ex. 8.)

Palmer filed the instant petition on or about September 12, 2007, in which he makes the following allegations:

> Ineffective assistance of counsel
> 1) Counsel by his own admission was unprepared to proceed with trial because he had not fully investigated the case or question[ed] the victim and state witness[es]. 2) Counsel failed to investigate or question witnesses that could have supported a self defense theory or involuntary manslaughter charge. 3) Petitioner was deprived of his right to a fair trial due to insufficient notice of additional indictments, that prosecutor claims counsel had fair notice of, etc.

(Pet. at 6.)

Respondent filed a Motion for Summary Judgment on December 27, 2007, and on February 4, 2008, Petitioner filed his Response in Opposition to Respondent's Motion for Summary Judgment as well as his own Motion for Summary Judgment. United States Magistrate Judge William M. Catoe issued a Report and Recommendation on June 18, 2008, in which he recommended granting Respondent's Motion for Summary Judgment and denying Petitioner's Motion for Summary Judgment. Palmer filed objections on or about July 10, 2008.

## **STANDARD OF REVIEW**

**A.     Legal Standard for Summary Judgment**

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc*., 915 F.2d 121, 123-24 (4th Cir. 1990).

### B.     Magistrate Judge's R&R

The Magistrate Judge only makes a recommendation to the Court. This recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged to review *de novo* those portions of the R&R that have been specifically objected to, and the court may accept, reject, or modify, in whole or in part, the recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1). Courts have held *de novo* review to be unnecessary when a party makes general and conclusory objections that do not direct the court to a specific error in the Magistrate Judge's proposed findings and recommendations. *See, e.g.*, *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982)*; Pendleton v. Rumsfeld*, 628 F.2d 102, 106 (D.C. Cir. 1980). Additionally, the court may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. §636 (b)(1). After a review of the entire record, the R&R, and Petitioner's objections, the court finds that the

Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law.  Accordingly, the court adopts the R&R and fully incorporates it into this Order.

## ANALYSIS

### A.  Section 2254 Petitions

With respect to those claims that were adjudicated by the state court on their merits, habeas relief is warranted only if a petitioner can demonstrate that the adjudication of his claims by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court explained that § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  *Id.* at 404-05.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Id.* at 405-06.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case.  *Id.* at 407-08.

"The federal habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state-court decision is objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 27 (2002). "The focus of the [unreasonable application] inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal habeas court may not issue the writ under the "unreasonable application" clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411.

### B.    *Strickland* Standard for Ineffective Assistance of Counsel

*Strickland v. Washington*, 466 U.S. 668 (1984), states that a meritorious ineffective assistance of counsel claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Id.* at 687–96. A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted); *see also Bowie v. Branker*, 512 F.3d 112, 119 n.8 (4th Cir. 2008); *Fields v. Att'y Gen. of Md.,* 956 F.2d 1290, 1297–99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1467 (4th Cir. 1985). In order to establish the second prong of *Strickland*, "[t]he defendant must

show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." *Id.*

### C. Objections

Palmer's first objection is that "his ground one issue was not addressed by [R]espondent[].  Ground one issue shows evidence of due process violation."  (Objections at 1.) Presumably Palmer is referring to his assertion that counsel was ineffective because he was unprepared for trial, having not fully investigated the case or questioned the victim and state witnesses.  It is clear, however, that Respondent did address such allegations, as Respondent states in his Motion for Summary Judgment,

> In the PCR order, the PCR judge specifically addressed the failure to reasonably prepare for trial (App. p. 859-8670) [sic] . . . .
>
> The Petitioner claims trial counsel rendered ineffective assistance by failing to properly prepare and that the post-conviction relief court erred in failing to find he received ineffective assistance of counsel in this regard. At the state PCR hearing, Petitioner testified his attorney was not prepared because he did not know "many things," did not interview witnesses, and failed to investigate. (App. p. 795, lines 16 - 25; p. 799, lines 14 - 25). The post-conviction relief court found the Petitioner was not credible in his allegation trial counsel failed to sufficiently prepare for trial. The PCR court found Petitioner's trial attorney was credible in his testimony at the hearing and that counsel was not deficient in trial preparation. (App. p. 859 - p. 861; p. 863). Respondent submits there is evidence to support the post-conviction relief court's conclusions which are entitled to the presumption of correctness.

(Resp. Mot. for Summ. J. at 8-10.)  Respondent also addresses trial counsel's preparation in a specific section of his Motion for Summary Judgment, stating that counsel attempted to interview individuals suggested by Petitioner but was unsuccessful, as some individuals were "on the run," and "[t]he individuals would speak with counsel by telephone but counsel knew

8

they would not appear in court for trial." (*Id*. at 10.)  Respondent also asserts counsel "made a strategic decision not to interview the State's witnesses before trial to avoid tipping these witnesses off as to the cross-examination he would conduct at trial." (*Id*.)  Thus, to the extent Petitioner is objecting to the R&R on the grounds that Respondent failed to address Petitioner's allegation that counsel was not prepared for trial, that allegation is without merit.  To the extent Petitioner objects to the Magistrate Judge's determination that Petitioner is not entitled to relief on this ground, the court will address that objection in turn.

As noted, the court presumes Palmer's first objection refers to his assertion that counsel was ineffective because he was not prepared for trial.  A close reading of Palmer's Objections, however, indicates another possible basis for his objection.  In a section of his Objections entitled "Due Process Violation," Petitioner seemingly asserts his trial counsel was ineffective for failing to object to the testimony of Jasper Lloyd and Carl Judge. (Objections at 3-4.)  In his application for post-conviction relief, Petitioner did allege he receive ineffective assistance of counsel for "failure to make objection," but no further detail is provided.  In addition, an attachment to Palmer's § 2254 petition alleges that his trial counsel was ineffective "due to his failure to object in regards to the violation of [P]etitioner's sixth (6) amendment rights." (Pet. Attachment at 9.)

Petitioner asserts that on the day of trial, he was surprised with two additional witnesses who gave critical testimony against the petitioner, these witnesses being Jasper Lloyd and Carl Judge. (Pet. Attachment at 8.)  At the evidentiary hearing, however, no one mentioned Jasper Lloyd or Carl Judge, and the three grounds specifically addressed in Judge Early's order were (1) failure to reasonably prepare for trial; (2) failure to properly explain elements of the crime; and

9

(3) failure to request jury charges on self-defense or manslaughter. (App. 859-63.) Because no one raised this argument at the PCR hearing or produced any evidence of ineffectiveness with respect to these two witnesses, the PCR judge did not address it in his order. Petitioner is thus not entitled to relief in this court on that ground. In *Hughes v. South Carolina*, 444 F. Supp. 2d 594 (D.S.C. 2006), the Magistrate Judge found in his R&R that because the petitioner did not "present the issue of ineffective assistance of counsel at his PCR hearing, he has not exhausted his administrative remedies and this court may not adjudicate his claim" pursuant to § 2254. *Hughes*, 444 F. Supp. 2d at 597. In his objections, the petitioner argued that he did raise the issue of ineffective assistance of counsel at the PCR hearing and in his application for PCR, and he further claimed the issue was raised in the state appeal to the South Carolina Supreme Court. *Id*. The court noted that while his *petition* did allege ineffective assistance of counsel, the record shows that he "did not pursue this claim at the PCR hearing, nor did he pursue any such claim in his PCR appeal." *Id*. The court stated,

> In South Carolina, [p]etitioner's failure to pursue the remaining claims at the PCR hearing constitutes abandonment of the claims, and the claims are thereafter procedurally barred. S.C. Code Ann. § 17-27-80; *see Plyler v. State*, 309 S.C. 408, 424 S.E.2d 477 (1992) (finding an issue that was neither raised at the PCR hearing nor ruled upon by the PCR court procedurally barred). Accordingly, as the R&R correctly concluded, this court is procedurally barred from considering the [p]etitioner's claim of ineffective assistance of counsel.

*Id*.

In the case *sub judice*, Petitioner did make allegations of ineffective assistance of counsel for failure to object in his state PCR petition. However, no evidence concerning counsel's failure to object to the testimony of Jasper Lloyd or Carl Judge was presented to the PCR court judge, and the PCR court judge's order does not address the allegation. For the reasoning

10

discussed in *Hughes*, the court concludes Palmer's claim is procedurally barred.[2]

As noted above, Petitioner's first ground for relief is that trial counsel was not prepared for trial and did not adequately investigate the case or question the victim or the State's witnesses. The Magistrate Judge determined the PCR court, in denying relief, reasonably applied *Strickland* and based its decision upon a reasonable determination of the facts in light of the evidence. (*See* R&R at 8.) Petitioner objects to this determination, stating, "Petitioner was surprised at trial with additional charges, and counsel admitted to not being prepared for the charges and when given the opportunity to interview critical witnesses/victim in regards to the matter, counsel failed to do so." (Objections at 1.) He further states in his Objections that at the time his trial started, he had received notice only of an indictment for murder; he states, "Clarification as to the facts of the new indictments were not made known to the [P]etitioner until after the jury was sworn and returned from a lunch recess." (*Id*. at 6.) Petitioner continues,

> Counsel did not object for the record as to client's lack of right to notification of these indictments nor did he prepare for the allegations stated in the indictments. . . . Counsel did not prepare. And when given the opportunity to question the

---

[2]Even if the claim were not procedurally barred, the court concludes Petitioner has not made a showing of ineffective assistance of counsel. Petitioner states, "Mr. Lloyd as well as Mr. Judge both gave testimony that neither of them spoke to any law enforcement authority in regards to this case, and neither pointed out the petitioner in any type or form of identification line up." (Objections at 2.) Petitioner cites to the following pages of the trial transcript for support: page 112, line 21 through page 113, line 4 and 16-24; and page 168, line 25 through page 169, line 10 and 16-20. However, pages 112 and 113 of the trial transcript reveal a discussion of whether Petitioner was asking for a jury charge on voluntary manslaughter, and pages 168 and 169 point to the State's closing argument. (*See* App. 644-45, 700-01.) Furthermore, at the PCR hearing, trial counsel testified that he received a copy of everything the Solicitor's Office had concerning the case against Palmer. (App. 831.) In other words, there is simply no evidence to support Palmer's allegation that his counsel's performance was deficient in this regard. In addition, "where the record is incomplete or unclear about . . . actions, we will presume that [counsel] did what he should have done, and that he exercised reasonable professional judgment." *Williams v. Head*, 185 F.3d 1223, 1228 (11th Cir. 1999).

11

victim in the new indictment allegations, counsel failed to do so.

(*Id*. at 6-7.)

The PCR court addressed such allegations of ineffective assistance of counsel, noting that Petitioner testified (1) he did not meet with his counsel until shortly before the day of trial, (2) he and trial counsel had very little discussion concerning possible defenses, and (3) trial counsel failed to interview either the State's witnesses or the two witnesses Petitioner "told trial counsel about." (App. 859-60.) The PCR court also noted that trial counsel, Robert Howe, testified (1) the solicitor made all discovery information available to him; (2) trial counsel himself conducted an independent investigation of the case; (3) because Petitioner denied being in the car from which gunshots were fired, counsel did not conduct an intensive, independent investigation of certain aspects of the case, such as the angle from which the eyewitnesses were able to see the shooter; and (4) it was trial counsel's strategy to "stay away from the car" as much as possible because it was the defense's theory that Petitioner was never in the car. (App. 860-61.) Judge Early's order of dismissal states,

> Regarding counsel's alleged deficiency in failing to interview certain witnesses, counsel testified he declined to interview identification witnesses prior to trial for strategic purposes. He further testified his attempts to speak with some of the witnesses the applicant suggested were complicated by the fact that some of the witnesses were "on the run" from law enforcement authorities and would not appear in court. Other witnesses would not co-operate with trial counsel's attempts to get statements from them inasmuch as their position was that the Applicant shot at them.
> This Court finds trial counsel's testimony as to his efforts in preparing for the trial of this case to be highly credible. This Court does not find the Applicant's testimony to be credible to this issue. Accordingly, this Court finds no deficiency on the part of trial counsel as to trial preparations.

(*Id*. at 861.)

This court agrees with the Magistrate Judge that Petitioner has not shown the PCR

court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Counsel performed his own investigation of the case, but several witnesses would not cooperate with him. Counsel was not deficient in failing to present testimony of witnesses when he was not certain as to the substance of their testimony. *See Cothran v. Turner*, 101 Fed. App'x 385, 388-89 (4th Cir. 2004) ("If Priest refused to discuss the case with [the defendant's trial counsel] before trial (as she admitted when she testified after trial, then [trial counsel's] failure to interview Priest did not amount to deficient performance. Furthermore, although [trial counsel] could still have obtained Priest's testimony by subpoenaing her, his decision not to do so when he could not confirm what her testimony would be was well within the bounds of competent representation, particularly in light of her hostile attitude." (citations omitted)); *Duckett v. Mullin*, 306 F.3d 982, 998 (10th Cir. 2002) ("It would be unreasonable to deem trial counsel ineffective for failing to discover potential mitigating evidence when counsel conducted a reasonable investigation but was stymied by potential witnesses who were not forthcoming."); *cf. McCabe v. North Carolina*, 314 F. Supp. 917, 921 (1970) ("[W]hile it is true that any defendant has the right to attempt to interview any witness he desires, it is likewise true that any witness has the right to refuse to be interviewed, if he so desires."). Furthermore, counsel made a strategic decision not to interview certain witnesses before trial; he stated,

> My practice normally is–when I have a witness that I know is going to not be a good witness for me from their statement–my practice is I don't like to speak with them and let them know what I might be asking them in the Courtroom so they can patch up whatever holes they may have in their testimony.

13

(App. 829.) Such a strategic decision does not constitute ineffective assistance of counsel. *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . .").

Petitioner also asserts counsel was ineffective because he was not prepared for trial in that counsel did not discover, until the day trial began, that the indictment for pointing a firearm charged that Petitioner pointed a firearm at an individual other than the deceased. Counsel argued at trial that Petitioner should not be forced to go forward on that charge because counsel did not receive a copy of the indictment until the beginning of the trial. (App. 22-34.) He also stated that he was not prepared to proceed on that particular portion of the case. (*Id*. at 34.) The court indicated that it did not "see a basis to grant [the defendant's] request as a matter of law," but stated that it would give trial counsel the opportunity to speak with the victim before she testified and that if it was necessary to stop early to give counsel time to prepare for that part of the case overnight, the court would do so. (*Id*. at 36-37.) The trial court thus concluded there was no error of law in allowing the case to proceed, and the court allowed trial counsel ample opportunity to speak with the victim. Even though it appears counsel chose not to speak with this witness, such choice does not necessarily amount to ineffective assistance of counsel, especially given trial counsel's testimony that he frequently chooses, as a matter of trial strategy, not to speak with witnesses before they are on the witness stand. Furthermore, trial counsel testified at the PCR hearing that it was his strategy to "stay away from . . . the car" because "[a]ll it could do was hurt the case." (*Id*. at 842-43.) The court therefore concludes the PCR court's adjudication of the claim that trial counsel was ineffective because he was not prepared for trial did not result in a decision that was contrary to, or involved an unreasonable application of,

14

clearly established Federal law, as determined by the Supreme Court of the United States or result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Petitioner's last objection indicates that he "objects to the findings on his self-defense issue, because [P]etitioner has proven by law, cases, and trial transcripts facts that self defense was a viable option . . . ." (Objections at 1.) The PCR court thoroughly addressed this issue and stated, in its order of dismissal,

> The Applicant asserts trial counsel was deficient in failing to request jury charges on self-defense and manslaughter. The Court finds this allegation to be without merit. Trial counsel testified that considering the nature of the crime and what the Applicant told him about his involvement in the crime, a defense theory founded on self-defense did not seem a viable option. In particular, trial counsel was hesitant to attempt to present a self-defense theory of the case because neither the facts of the case nor the Applicant's account of the events as relayed to his attorneys supported such a claim. The State's witnesses testified that the Applicant shot or attempted to shoot at the victim several times, then shot at a car in which two of the witnesses were riding. According to trial counsel's account of the events as conveyed to him by the Applicant, any pursuit of a self-defense or manslaughter theory at trial would have been inconsistent with the Applicant's position that he was actually innocent of the crimes alleged. Trial counsel testified he and the Applicant had several disagreements during the trial, including the Applicant's insistence that counsel ask the eyewitnesses questions which ultimately undermined the Applicant's defense of actual innocence and/or the possibility or probability of a finding of manslaughter rather than murder.
> Moreover, the record in this case convinces the Court that trial counsel's decision not to pursue a theory of self-defense or manslaughter was a valid trial strategy in light of the lack of evidence to support either theory and the fact that either theory of defense would have conflicted with the Applicant's position of actual innocence and counsel's attempts to show that the eyewitness accounts arose from misidentification. Accordingly, this allegation is denied.

(App. 862-63.)

The court agrees with the Magistrate Judge that Petitioner has not shown the PCR court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable

15

application of, clearly established Federal law, as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Counsel did make a request for an involuntary manslaughter charge, which was denied, and Petitioner waived a charge on voluntary manslaughter. (*Id*. at 637-42, 656, 644-46.)[3] Although Petitioner asserts there was more than one gun present at the location of the shooting, thus making a self defense a viable theory, the testimony he points to in support of that assertion is a statement that the witness "saw something in his [(presumably the victim's)] waist line." (*Id*. at 812.) Trial counsel testified at the PCR hearing, "They would tell us on the telephone, and as best I remember the only really positive thing we got was that the deceased had his hand under his shirt and looked like he might have a gun, and–but we had no way of getting that in without the witness, and absent actually seeing the gun I don't know how effective that would have been." (*Id*. at 827-28.) Indeed, counsel's decision not to pursue a theory of self defense did not amount to ineffective assistance of counsel, especially in light of the lack of evidence to support such defense and the Petitioner's assertion that he was actually innocent of the crimes charged. *See Michael v. Crosby*, 430 F.3d 1310, 1322 (11th Cir. 2005) (concluding the state habeas court's

---

[3]In his Objections, Petitioner asserts that while he waived a charge on voluntary manslaughter, he did not waive a charge on involuntary manslaughter. (Objections at 11.) He states, "The judge had a responsibility to instruct the jury on what the evidence shows and not what the defendant wants." (*Id*.) However, Petitioner and his counsel made the strategic choice not to pursue an instruction for voluntary manslaughter; trial counsel testified at the PCR hearing that Palmer did not want an instruction on voluntary manslaughter because he "said if we do that, they're going to convict me of something, and he basically indicated he would rather roll the dice and not have any chance but murder." (App. 824.) Such a decision is a strategic one and does not indicate counsel was ineffective. Furthermore, counsel sought and strenuously argued for a charge on involuntary manslaughter. (*Id*. at 637-42.) Counsel's performance was thus not deficient in this regard.

16

analysis of counsel's attempt to present a learned-helplessness defense was not contrary to, and did not involve an unreasonable application of, *Strickland* because counsel's testimony that he made a tactical decision to pursue this defense rather than Battered Spouse Syndrome or Post-Traumatic Stress Disorder supports the state court's rejection of the ineffectiveness claim); *Nolen v. Meyers*, 98 Fed. App'x 97, 99 (3d Cir. 2004) ("Nolen's trial counsel testified during the state post-conviction proceedings that he made a conscious decision not to pursue an alibi defense based on the inconsistencies in the alibi testimony.  He thought that an alibi jury instruction would serve only to highlight these inconsistencies.  While this strategy may not have been ideal, the state court certainly did not err in concluding that it was objectively reasonable, especially in light of the Supreme Court's mandate that '[j]udicial scrutiny of counsel's performance must be highly deferential.'" (quoting *Strickland*, 466 U.S. at 689)); *cf. Taylor v. Poole*, 538 F. Supp. 2d 612, 621 (S.D.N.Y. 2008) ("[H]is trial counsel's strategy to cast doubt on the prosecution's case was to argue that Steed had misidentified [the defendant].  Arguing [the defendant's] suggested strategy would have placed him at the scene of the incident, and would have contradicted trial counsel's chosen strategy.  Thus, any challenge raised by appellate counsel to these decisions by trial counsel would have been futile.").  Petitioner's objection is thus without merit.

## **CONCLUSION**

It is therefore **ORDERED**, for the foregoing reasons, that Respondent's Motion for Summary Judgment is **GRANTED**.  It is further **ORDERED** that Petitioner's Motion for Summary Judgment is **DENIED**.

**AND IT IS SO ORDERED**.

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**September 2, 2008**

## NOTICE OF RIGHT TO APPEAL

Petitioner is hereby notified that he has the right to appeal this Order within thirty (30) days from the date hereof, pursuant to Federal Rules of Appellate Procedure 3 and 4.  *See* Fed. R. App. P. 3-4.